# SUPREME COURT,
## STATE OF KANSAS.

## JULY TERM, 1917.

### PRESENT:

Hon. WILLIAM A. JOHNSTON, Chief Justice.
Hon. ROUSSEAU A. BURCH,
Hon. HENRY F. MASON,
Hon. SILAS W. PORTER,
Hon. JUDSON S. WEST, } Justices.
Hon. JOHN MARSHALL,
Hon. JOHN S. DAWSON,

---

No. 20,316.

FREMONT RODGERS, *Appellant,* v. O. R. SLAVENS, *Appellee.*

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion on rehearing filed December 8, 1917. Former opinion of affirmance adhered to. (For original opinion see 101 Kan. 4, 165 Pac. 655.)

*Carr W. Taylor,* of Hutchinson, *John H. Connaughton,* and *H. E. Walter,* both of Kingman, for the appellant.

*Frank L. Martin, Van M. Martin,* and *Howard S. Lewis,* all of Hutchinson, for the appellee.

### OPINION ON REHEARING.

The opinion of the court was delivered by

DAWSON, J.: In the opinion in this case handed down in June (101 Kan. 4) an excerpt of appellant's testimony taken from the transcript was quoted as evidence in support of defendant's contention that appellant Rodgers retained his interest in the cattle when they were sold to Rawlins. At the rehearing the court has been advised that this testimony had reference to a phase of the lawsuit not before this court on

Rodgers v. Slavens.

appeal. There was, however, pertinent evidence sufficient to support defendant's contention on the matter under review. As was said in our original opinion:

"Other features of the evidence were, that the freight bill on the cattle from El Paso to Dalhart was $1,600; that in the presence of a witness, who was the president of a Hutchinson bank, a conversation occurred at the sick bed of Slavens, where Rodgers explained that he was the owner of a half interest in the cattle sold to Rawlins, and that the interest of Slavens, which was the $1,142 which he had advanced on the original purchase price, and his share of the profits by the sale to Rawlins, $800, should be paid to the Hutchinson bank for the benefit of Slavens. To another witness Rodgers asserted that he had a half interest in the cattle. Rodgers received all the cash paid by Rawlins; Slavens none." (p. 7).

Elsewhere it appears in Slavens' cross-exmination:

"Q. You knew Rodgers was only acting as a commission man?  A. No, sir, he owned a half interest in these cattle."

This accords in part with Rodgers' testimony, where he stated that it was a half interest in the cattle which Slavens sold to Rawlins.

On October 21, 1911, Rodgers wrote to Rawlins:

"I know that it was understood the day the sale was made, that you were only buying one-half interest in the cattle."

On December 22, 1911, Rodgers wrote to Rawlins:

"When Mr. Slavens sold you the cattle I owned a half interest in them at that time, I supposed I was out of the deal. . . . As it now stands I do not know whether I own a one-sixth [?] interest in the steers or not."

It is needless to rehearse the evidence at greater length. It has been thoroughly considered; and notwithstanding some conflict of evidence and some evidence to the contrary, the court holds that it was amply sufficient to prove defendant's contention that Rodgers was interested as a principal throughout the entire transaction involved in this cattle deal; that he owned a half interest in the cattle when he and Slavens bought them, and that he retained his half interest after Rawlins acquired the interest of Slavens; that when he paid the note sued on he paid his own and Rawlins' debt; and, so far as the pleadings, evidence and findings in this case disclose, the defendant Slavens owed Rodgers nothing—either as maker, surety, or indorser, and the net result in the district court was in substantial accord with the demands of justice. The judgment is again affirmed.